UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DANA RUTH LIXENBERG,

                Plaintiff,

      v.

COMPLEX MEDIA, INC., a Delaware
Corporation; and DOES 1–10,

                Defendants.

No. 22-CV-354 (RA)

<u>OPINION & ORDER</u>

---

RONNIE ABRAMS, United States District Judge:

Plaintiff Dana Ruth Lixenberg commenced this action against Defendants Complex Media, Inc. ("Complex Media" or "Defendant") and ten John Does for alleged copyright infringement and violations of the Digital Millenium Copyright Act ("DMCA"), 17 U.S.C. § 1202, relating to their purported use of her photograph of the musician known as the Notorious B.I.G. Complex Media has moved to dismiss, or, in the alternative, for summary judgment. No party has appeared on behalf of the John Does. For the reasons that follow, Defendant's motion is denied in its entirety.

## BACKGROUND

The Court draws the following facts from the operative complaint, accepting "well-pleaded factual allegations" as true for purposes of resolution of the pending motion to dismiss. *Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020).

Plaintiff is a photographer who lives in the Netherlands. Dkt. No. 35 (Second Am. Compl., or "SAC") ¶¶ 4, 8. In 1996, she created and published a photograph of well-known musical artist the Notorious B.I.G. (the "Photograph"). *Id.* ¶¶ 9–12. This Photograph, shown below, is the subject of this litigation.



*Id.* Ex. A. Plaintiff is the exclusive owner of this Photograph, which is registered with the United States Copyright Office under Registration No. VA0001976754. *Id.* ¶¶ 9–10.

Complex Media is a Delaware corporation with its principal place of business in New York. *Id.* ¶ 5. Does 1–10 are other as of yet unidentified parties who purportedly "infringed Plaintiff's copyright, have contributed to the infringement of Plaintiff's copyright, or have engaged in one or more of the wrongful practices alleged herein." *Id.* ¶ 6. Each Doe is alleged to be an "agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of the remaining Defendants," who "act[ed] within the scope of such agency, affiliation, alter-ego relationship and/or employment" when he "participated in or subsequently ratified and adopted" the allegedly infringing acts. *Id.* ¶ 7.

In approximately September 2021, Plaintiff discovered that Complex Media had reproduced the Photograph on its website without attribution to Plaintiff or her authorization. *Id.* ¶¶ 13–14, 17, 26. A screenshot of the pertinent webpage, attached to the operative complaint and pictured below, shows the Photograph on Defendant's website. *Id.* Ex. B.



*Id.*

The screenshot depicts the Photograph in the center of Defendant's webpage, located below the article title and above its body. There is no attribution below the Photograph. In prominent text, the article title reads, "Biggie's Birthday Is Now Officially 'The Notorious B.I.G. Day' in Brooklyn." Just below the title, in small font on the left side of the page, is a byline that reads "BY COMPLEX STAFF." Five icons separate the byline from the Photograph, indicating four options to share the article and a button to comment. Above the title,[1] a large ad spans the width of the page, and above the ad, in conspicuous font at the top left-hand side of the page, is Defendant's brand name, "COMPLEX."

Plaintiff claims that, because she did not subscribe to Defendant's website or regularly view it—nor did she subscribe to reverse image search software—she did not and had no reason to learn

---

[1] Between the title and the ad in small font are the words "PIGEONS&PLANES," the meaning of which is not explained in the materials submitted to the Court.

of Defendant's publication of her Photograph before 2021. *Id.* ¶¶ 16–17, 19–20. After learning of the publication, Plaintiff alleges that she asked Defendant to remove the Photograph from its website and attempted to resolve the dispute without litigation, although no resolution was reached. *Id.* ¶ 27.

Prior to Complex Media's publication of her Photograph, Plaintiff alleges that the Photograph was "routinely published with attribution, credit, and other copyright management information identifying Plaintiff as the author." *Id.* ¶ 36. In support of her contention, she has submitted two "[n]onexclusive exemplars"—screenshots—of two other online publications. *Id.* In the first, the Photograph accompanies an online article, and attribution information is located below and to the left of the Photograph. *Id.* The domain name for this article is visible in the screenshot and contains the numbers "2020/02," which Defendant says means that the article was published in 2020, after the purported infringement in this action occurred. *Id.*; Dkt. No. 52 ("Mot. to Dismiss") 6. In the second exemplar, Plaintiff's attribution is located directly below the Photograph. SAC ¶ 36. Defendant contends that a visit to the domain name visible in the second exemplar shows the article was published in 2019, also after Defendant's publication of the Photograph. Mot. to Dismiss 6–7.

Plaintiff alleges that Defendants "remov[ed] [her] attribution information" from the Photograph, including "her name and/or metadata"; and added the "'Complex' name and branding," as well as the byline "BY COMPLEX STAFF," thereby "implying that Complex created the entire article." *Id.* ¶ 38. She claims that Complex Media's logo and byline, as well as the absence of any credit below the Photograph, "signals authorship or copyright ownership of the entire article, including the Subject Photograph." *Id.* ¶ 39. Defendants removed the Photograph's attribution, she further alleges, "knowing or having reason to know that such removal would

induce, enable, facilitate, or conceal an[] infringement in violation of 17 U.S.C. § 1202(b)." *Id.* ¶ 42. Plaintiff contends that, by publishing the Photograph with only Complex Media's attribution information, Defendants "knowingly provided and/or distributed false copyright management information in violation of 17 U.S.C. § 1202(a), and did so in order to induce, enable, facilitate, or conceal infringement." *Id.* ¶ 41.

Plaintiff commenced this action on January 13, 2022. Dkt. No. 1. She filed a first amended complaint in March 2022, asserting claims for copyright infringement, vicarious and/or contributory copyright infringement, and violations of the DMCA. Dkt. No. 15.

On January 10, 2023, this Court granted Complex Media's motion to dismiss the first amended complaint. Dkt. No. 34. First, the Court dismissed her copyright infringement claim as time-barred, reasoning that it was not commenced within three years of when the claim accrued under the discovery rule applied to copyright actions in this circuit, and that Plaintiff, as a "seasoned litigator," should have discovered the infringement during the statutory period. *Id.* at 3–5. Second, the Court dismissed her vicarious and contributory copyright infringement claims, finding the allegations too conclusory and lacking factual support to state a claim. *Id.* at 6–7. Finally, the Court dismissed Plaintiff's DMCA claims, concluding that she had not plausibly alleged the existence of Plaintiff's copyright management information ("CMI") on the Photograph, Defendants' removal of this information, or their addition of false CMI. *Id.* at 7–10.

The Court provided Plaintiff the opportunity to amend. *Id.* at 11. She did so on February 9, 2023, bringing claims for copyright infringement and violations of the DMCA only. Dkt. No. 35. Complex Media again moved to dismiss. Dkt. No. 38.

In November 2023, the Court *sua sponte* stayed the action pending resolution of *Michael Grecco Productions, Inc. v. RADesign, Inc.*, No. 21-CV-8381, 2023 WL 4106162 (S.D.N.Y. June

20, 2023), a factually similar case then on appeal in the Second Circuit. Dkt. No. 47. Following

the circuit's decision holding that "[t]here is no 'sophisticated plaintiff' exception to the discovery

rule" in a copyright action, *see Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 148

(2d Cir. 2024), this Court lifted the stay of the instant action, Dkt. No. 48. Because the circuit's

decision bore directly on the parties' arguments about the application of the so-called

"sophisticated plaintiff" or "seasoned litigator" exception to the discovery rule, the Court denied

the motion to dismiss without prejudice. *Id.*

Now pending before this Court is Complex Media's amended motion to dismiss the second

amended complaint. Dkt. No. 51. The Court heard oral argument on October 1, 2025.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must plead "enough

facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007).[2] "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a

cause of action," which are "supported by mere conclusory statements, do not suffice." *Id.*

In deciding a motion to dismiss, the Court "constru[es] the complaint liberally, accept[s]

all factual allegations in the complaint as true, and draw[s] all reasonable inferences in the

plaintiff's favor," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002), although it

need not "accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at

555. A court may, however, consider "documents attached to the complaint as an exhibit or

incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents

---

[2] Unless otherwise indicated, quotations omit all internal citations, quotation marks, footnotes, and omissions, and adopt alterations.

either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *See Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). In a copyright action, a court also examines "the works themselves," which "supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010).

## DISCUSSION

### I.    Copyright Infringement

Complex Media raises two arguments in favor of dismissal. First, Defendant argues that Plaintiff's claim is time-barred because she had "inquiry notice" of the purported infringement more than three years before filing suit. Mot. to Dismiss 13–14. Second, Defendant argues that the Supreme Court's decision in *Rotkiske v. Klemm*, 589 U.S. 8 (2019), bars this claim. *See id.* at 15. For the reasons below, Defendant's motion to dismiss the copyright infringement claim is denied.

### A.  Inquiry Notice

Under the Copyright Act, "[n]o civil action shall be maintained under the [Act] unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). In determining when a claim accrued, the Second Circuit applies the discovery rule. Under this rule, an infringement claim does not accrue when the injury occurs, but rather when "the copyright holder discovers, or with due diligence should have discovered, the infringement." *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 124 (2d Cir. 2014). To plead a timely violation of the Copyright Act then, Plaintiff "must have been unable, with the exercise of due diligence, to discovery the infringing activity" by January 13, 2019, within "three years before the complaint was filed" on January 13, 2022. *Grecco*, 112 F.4th at 151 (emphasis omitted); *see* Dkt. No. 1.

Defendant urges this Court to dismiss Plaintiff's copyright claim as time-barred because she should have discovered the infringing activity before January 13, 2019. It asserts that she was on "inquiry notice" of the infringement before this period not only because she is "a seasoned litigator," but also because "she has litigated copyright infringement claims regarding the same photograph on the internet more than three years prior to filing this lawsuit." Mot. to Dismiss 13. The Second Circuit's decision in *Michael Grecco Products, Inc. v. RADesign, Inc*. forecloses this argument.

In *Grecco Products*, the Second Circuit rejected the rule previously applied by some district courts in this circuit—including this one—that an exception or alternative rule of accrual applies to a "sophisticated plaintiff," who is a relatively experienced or seasoned litigator. 112 F.4th at 152. Such experience does not, the Second Circuit emphasized, "relieve a defendant of her burden to plead and prove a Copyright Act limitations defense." *Id.* The "well-established discovery rule," *id.* at 148, instead "turns on *due diligence*," which in turn requires a "fact-intensive inquiry of the copyright holder's efforts to discover the infringement," *id.* at 152. What import a plaintiff's "sophistication" has on the due diligence inquiry, the Court left undecided. *Id.* at 154 n.8. On a motion to dismiss, however, the Court cautioned against finding a copyright infringement claim to be untimely unless it is "clear from the face of [the] complaint" that it is so. *Id.* at 152. A "likelihood, even a high one," that a plaintiff should have, with due diligence, discovered the purported infringement more than three years before the complaint's filing is not enough to dismiss a copyright claim as untimely. *Id.* at 153. "To hold otherwise would improperly shift the pleading burden for an affirmative defense from the defendant to the plaintiff." *Id.*

Defendant nonetheless argues that Plaintiff's awareness of, and prior lawsuits asserting, copyright infringements involving the same Photograph "is sufficient inquiry notice" for this Court

to conclude that Plaintiff's claim is untimely. Mot. to Dismiss 2. Not so. In *Grecco*, the Court explicitly rejected the contention that the plaintiff's "past litigation involving different infringements by different defendants . . . proved" that he had not discovered the infringement within three years of bringing the lawsuit "due to a lack of due diligence." 112 F.4th at 154. This Court likewise rejects Defendant's argument that Plaintiff's knowledge of prior infringement of the Photograph makes it "clear" that she should have discovered this particular infringement more than three years prior to the commencement of this action. *See id.* at 148 ("[A] copyright holder's *general* diligence or allegations of diligence in seeking out and litigating infringements, alone, are insufficient to make it clear that the holder's *particular* claims in any given case should have been discovered more than three years before the action's commencement."). In fact, drawing all reasonable inferences in favor of Plaintiff, one could conclude that her diligence in pursuing other infringing uses of the Photograph demonstrates "that [she] *was* exercising due diligence and thus [her] . . . 2021 discovery of [the] alleged infringement was as soon as diligently possible." *Id.* at 153.

In urging that this Court weigh Plaintiff's prior litigation regarding the Photograph against her, Defendant insists that the Second Circuit did not answer the question of when a district court may properly consider a copyright-holder's sophistication. "The *Grecco* Court," Defendant contends, "did not decide whether or to what extent a court may properly consider the copyright holder's level of so-called sophistication and left that for courts having the facts before them like here to make such a diligence inquiry." Mot. to Dismiss 13 n.3 (quoting 112 F.4th at 154 n.8). That is only partially true. The *Grecco* Court left "for another day—in an appeal where the district court *ha*[*d*] reached the fact-intensive diligence inquiry—questions about what, if any, role a particular plaintiff's sophistication may play in that inquiry." 112 F.4th at 154 n.8. In short, what relevance a

plaintiff's sophistication has in determining the application of the discovery rule is for determination after development of the factual record, and is not one the Court will, or should, address today.

Finally, Defendant's assertions that its website was freely "available to viewers all over the world," and that reverse image search has been freely available since 2008, does not alter the Court's conclusion. Mot. to Dismiss 6. "The discovery rule does not," after all, "impose on copyright holders a general duty to police the internet to uncover infringement." *N.Y. Times Co. v. Microsoft Corp.*, 777 F. Supp. 3d 283, 302 (S.D.N.Y. 2025). Accordingly, at this stage of the litigation, the Court rejects Defendant's argument that Plaintiff's copyright claim is time-barred because she had "inquiry notice" of the purported infringement more than three years before filing suit.

### B. *Rotkiske v. Klemm*

Defendant next argues that the Supreme Court's decision in *Rotkiske v. Klemm*, 589 U.S. 8 (2019), as well as *Sohm v. Scholastic Inc.*, 959 F.3d 39 (2nd Cir. 2020), "renders the discovery rule inapplicable in copyright infringement cases *absent a claim of fraud*," and there is no claim of fraud here. Mot. to Dismiss 15. This Court previously concluded that *Rotkiske* did not alter the discovery rule in copyright actions. *See Lixenberg v. Complex Media, Inc.*, No. 22-CV-354, 2023 WL 144663, at *2 n.2 (S.D.N.Y. Jan. 10, 2023). Relying on the Second Circuit's decision in *Sohm*, this Court explained that *Rotkiske* "was based on the [Supreme] Court's interpretation of the Fair Debt Collection Practices Act's text," and "did not interpret the Copyright Act's statute of limitations." *Id.* (quoting *Sohm*, 959 F.3d at 50 n.2). Defendant admits that it is making the same argument that this Court previously rejected in order to preserve the issue for appeal. *See* Mot. to

Dismiss 3. Considering Defendant's *Rotkiske* argument again in light of the circuit's decision in *Grecco*, this Court once again finds it unpersuasive.

The circuit's decision in *Grecco*, decided after *Rotkiske*, compels this Court to conclude that the discovery rule remains controlling. In *Grecco*, the circuit explained that "the discovery rule determines when an infringement claim accrues under the Copyright Act" and applied this "well-established" rule. 112 F.4th at 148; *see also Sohm*, 959 F.3d at 50 & n.2 (finding *Rotkiske* "inapposite" and applying the discovery rule in light of its "continuing propriety . . . in this Circuit"). It is therefore clear that the discovery rule remains the law of this circuit. Indeed, Defendant admitted as much at oral argument.

Defendant draws principal support for its position from the dissent in *Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366, 375–76 (2024) (Gorsuch, J., dissenting). *See* Mot. to Dismiss 15–17. But in *Warner Chappell*, the majority explained that it had "never decided whether . . . a copyright claim accrues when a plaintiff discovers or should have discovered an infringement, rather than when the infringement happened," but passed on the issue and assumed that the discovery rule applied. 601 U.S. at 371. Because the Second Circuit has thus far rejected Defendant's argument, and the Supreme Court has not held otherwise, Defendant's motion to dismiss based on *Rotkiske* is denied.

## II.    Violations of the Digital Millennium Copyright Act

Congress enacted the DMCA both "to strengthen copyright protection in the digital age," *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 435 (2d Cir. 2001), while "also establish[ing] limitations on copyright liability in the interest of promoting growth, development, and innovation in the digital universe," *Fischer v. Forrest*, 968 F.3d 216, 222 (2d Cir. 2020). To these ends, §§ 1202(a) to (c) of the DMCA "protect[] the integrity of copyright management information" as

it is defined under the Act, "and prohibit[] the removal of CMI from copyrighted works." *Id.* Defendant asks the Court to dismiss Plaintiff's DMCA claims for removal of her copyright management information, or CMI, and distribution of false CMI, in violation of §§ 1202(b) and (a), respectively. For the reasons given below, Defendant's motion is denied.

### A. Copyright Management Information

The DMCA establishes several pieces of "information" as sufficient to constitute CMI when "conveyed in connection with copies . . . or displays of a work," including "[t]he name of, and other identifying information about, the author" and "the copyright owner of the work, including the information set forth in a notice of copyright." 17 U.S.C. § 1202(c). CMI's purpose "is to inform the public that something is copyrighted," *Roberts v. BroadwayHD LLC*, 518 F. Supp. 3d 719, 737 (S.D.N.Y. 2021). Although such information need not "appear on the work itself," it must "be accessible in conjunction with, or appear with, the work being accessed." *Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368, 377–78 (S.D.N.Y. 2019), *aff'd*, 970 F.3d 167 (2d Cir. 2020).

The legislative history of the DMCA demonstrates legislators' "intent that the phrase 'conveyed' be understood in the broadest sense possible." *Post Univ. v. Course Hero, Inc.*, No. 21-CV-1242, 2023 WL 5507845, at *4 (D. Conn. Aug. 25, 2023). Accordingly, so called "gutter credits," which "are often placed adjacent to photographs to indicate its photographer," *Mango*, 356 F. Supp. 3d at 372, constitute CMI when they are "conveyed in connection with the content," *id.* at 377. Certain courts have placed limits on what identifying information constitutes CMI. For example, in one case, a "generic" copyright notice "located at the bottom of the webpage in a shaded box, separating it from the rest of the content on the webpage" was found to be insufficient to constitute CMI because it was not conveyed in connection with the content and does not "communicate ownership." *SellPoolSuppliesOnline.com, LLC v. Ugly Pools Ariz., Inc.*, 804 F.

App'x 668, 671 (9th Cir. 2020). But in most circumstances, where ownership information is "merely . . . accessible in conjunction with, or appear[s] with, the work being accessed," it is sufficient to constitute CMI. *Mango*, 356 F. Supp. 3d at 378.

### B. Removal of CMI in Violation of § 1202(b)

Section 1202(b) of the DMCA provides, in relevant part, that "[n]o person shall, without the authority of the copyright owner or the law—

> (1) intentionally remove or alter any copyright management information,
> (2) distribute . . . copyright management information knowing that the copyright management information has been removed . . . without authority of the copyright owner or the law, or
> (3) distribute . . . copies of works . . . knowing that copyright management information has been removed . . . without authority of the copyright owner or the law,
> knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

17 U.S.C. § 1202(b). Thus, to establish a violation of § 1202(b), a plaintiff "must . . . prove the following: (1) the existence of CMI in connection with a copyrighted work; and (2) that a defendant distributed works or copies of works; (3) while knowing that CMI has been removed or altered without authority of the copyright owner or the law; and (4) while knowing, or having reasonable grounds to know that such distribution will induce, enable, facilitate, or conceal an infringement." *Mango*, 970 F.3d at 171. Here, Defendant disputes all but the second element.

In this Court's prior opinion and order, it dismissed Plaintiff's § 1202(b) claim, finding that she had not plausibly alleged the existence of CMI on the Photograph or Defendants' intentional removal of it. *Lixenberg*, 2023 WL 144663, at *4. The Court noted the absence from the complaint of any example of the Photograph being published with CMI, or allegation as to what CMI had existed on the Photograph and been removed. *Id.* Accordingly, the Court found the allegations too "barebones" to state a plausible claim. *Id.*

13

In her second amended complaint, Plaintiff has added new allegations, including the provision of "[n]onexclusive exemplars" of the Photograph published with CMI properly attributing authorship to her, SAC ¶ 36; and allegations that Complex Media's branding and byline signaled authorship of the entire article, particularly in the absence of other attribution information for the Photograph, *id.* ¶¶ 38–39. Defendant now urges dismissal of the second amended complaint, asserting that Plaintiff has not alleged the existence of CMI prior to the purported infringement or plausibly pled Defendants' knowledge and intent. Mot. to Dismiss 12. Having examined Plaintiff's additional allegations and the parties' arguments, the Court finds that Plaintiff has stated a § 1202(b) claim for the reasons below.

### 1. Existence of CMI

Plaintiff has plausibly alleged the existence of CMI on the Photograph. In the operative complaint, Plaintiff now alleges that the Photograph "was routinely published with attribution, credit, and other copyright management information identifying Plaintiff as the author," and provides "[n]onexclusive exemplars" of such publications. See SAC ¶ 36. It is undisputed that these exemplars demonstrate prior publications of the Photograph with gutter credits attributing authorship of the Photograph to Plaintiff, which are legally sufficient to constitute CMI. *Mango*, 356 F. Supp. 3d at 377.

Defendant contends that Plaintiff's exemplars evidence CMI on the Photograph only after the purported infringement occurred in 2016. Mot. to Dismiss 12. Even crediting this assertion, it is not fatal to Plaintiff's claim. Plaintiff specifically alleged that the examples she submitted were "[n]onexclusive." SAC ¶ 36. She further pled that the Photograph was "publicly displayed and distributed . . . directly or through license" before the purported infringement occurred, *id.* ¶ 12; was available online before the infringement, *id.* ¶ 25; and was "routinely published with

attribution, credit, and other copyright management information identifying Plaintiff as the author," *id.* ¶ 36. These allegations are together sufficient to "nudge[] [Plaintiff's] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, although Plaintiff will ultimately have the burden of proving these allegations at summary judgment or trial.

### 2. Double Scienter

Plaintiff also plausibly alleges Defendants' actual knowledge of the removal and constructive knowledge that the removal concealed their own infringement. "Section 1202(b)(3) contains a so-called double-scienter requirement: the defendant who distributed improperly attributed copyrighted material must have actual knowledge that CMI has been removed or altered without authority of the copyright owner or the law, as well as actual or constructive knowledge that such distribution will induce, enable, facilitate, or conceal an infringement." *Mango*, 970 F.3d at 171. An infringement under this provision is not, however, "limited to the infringing acts of third parties" or "future infringing conduct." *Id.* at 172. Rather, it "encompasses an infringement that, upon distribution, will conceal the fact of *that* infringement," including "an infringement committed by the defendant himself." *Id.*

Complex Media argues that Plaintiff has failed to plead double scienter because she does not plausibly allege an "intentional" violation, use of the word "knowledge" is conclusory, and all allegations are "upon information belief." Mot. to Dismiss 9–10. Plaintiff's allegations as to scienter are certainly limited, but they are nonetheless sufficient, "especially given this Circuit's leniency when evaluating scienter on a motion to dismiss." *N.Y. Times Co.*, 777 F. Supp. 3d at 315; *see In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 693 (2d Cir. 2009) ("We are . . . lenient in allowing scienter issues to withstand summary judgment based on fairly tenuous

inferences, because such issues are appropriate for resolution by the trier of fact. The same holds true for allowing such issues to survive motions to dismiss.").

Plaintiff alleges that, "[w]hen Defendants published the Subject Photograph, they removed Plaintiff's copyright management information from the Subject Photograph and added their own, knowing or having reason to know that such removal would induce, enable, facilitate, or conceal an[] infringement in violation of 17 U.S.C. § 1202(b), as set forth [in her pleadings]." SAC ¶ 42. She further alleges "on information and belief that Defendants . . . copied, reproduced, displayed, and distributed the Subject Photograph as part of the Infringing Use." *Id.* ¶ 30.

These allegations are not unlike the "sparse" allegations the court found sufficient to state a § 1202(b) claim in *Hirsch v. CBS Broadcasting Inc.*, No. 17 Civ. 1860, 2017 WL 3393845, at *8 (S.D.N.Y. Aug. 4, 2017) (finding plaintiff's allegations sufficient to survive motion to dismiss where plaintiff alleged "only that on 'information and belief,' [defendant] 'intentionally and knowingly removed copyright information identifying Plaintiff as the photographer of the Photograph,' and that 'upon information and belief, the removal of said CMI was made by Defendants intentionally, knowingly, and with the intent to induce, enable, facilitate, or conceal their infringement of Plaintiff's copyright in the Photograph'"). The *Hirsch* court reasoned that these allegations, as well as the purportedly infringing conduct pled, together "supplie[d] a fair basis on which to infer this [scienter] element." *Id.* ("It is . . . fairly inferred, at the pleading stage, that the [defendant's] employee(s) who excised [plaintiff's] photo credit did so aware that a photo credit was being eliminated and that the photo as cropped would therefore appear on a televised episode.").

Likewise, Plaintiff's allegations as to Defendants' infringing conduct support inferences of their actual and constructive knowledge. Plaintiff has submitted a screenshot of Complex Media's

16

publication of her Photograph without any CMI attributing authorship to her, as well as exemplars demonstrating publication of the Photograph with such CMI. *See BanxCorp. v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 610 (S.D.N.Y. 2010) ("Providing an actual example of the allegedly infringing ad is obviously more than a conclusory allegation."). Crediting Plaintiff's plausible allegation that the Photograph was routinely published with such CMI, and drawing all reasonable inferences in her favor, Defendants would have had to have removed the CMI before publication. *Cf. Aaberg v. Francesca's Collections, Inc.*, No. 17-CV-115, 2018 WL 1583037, at *8 (S.D.N.Y. Mar. 27, 2018) (denying motion to dismiss although plaintiffs had not alleged "exactly how the Defendants allegedly removed the CMI").[3] Plaintiff has thus plausibly alleged actual knowledge.

She has also plausibly alleged constructive knowledge that distribution of the Photograph without her CMI would conceal Defendants' own infringement. Infringement under this provision is not "limited to the infringing acts of third parties" or "future infringing conduct." *Mango*, 970 F.3d at 172. It is enough to allege that Defendants knew their publication without CMI would conceal their own infringing conduct. *See id.* In light of Plaintiff's allegation that Defendants knew their conduct would conceal their infringement, *see* SAC ¶ 42, and this circuit's "lenien[cy] in allowing scienter issues to withstand [motions to dismiss] based on fairly tenuous inferences," *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d at 693, the Court finds that Plaintiff has plausibly pled constructive knowledge. This is enough to state a CMI removal claim under the DMCA. *See Devocean Jewelry LLC v. Associated Newspapers Ltd.*, No. 16-CV-2150, 2016 WL 6135662, at *2 (S.D.N.Y. Oct. 19, 2016) ("Plaintiff has done enough by alleging that Defendant removed the CMI from the Screen Grabs [of plaintiff's copyrighted video] and by attaching as an

---

[3] Where a plaintiff argues that a defendant intentionally removed CMI by designing a computer model to do so, more detail may be necessary at the pleading stage as to how such removal occurs. *See N.Y. Times Co.*, 777 F. Supp. 3d at 314 (concluding that the *Times*' "conclusory statement that defendants' process of training their [large language models] removes CMI 'by design'" was inadequate to plausibly allege a § 1202(b) claim). This is not such a case.

exhibit to the Complaint a copy of the article in which the altered screen grabs appeared."). Accordingly, Defendant's motion to dismiss the § 1202(b) claim is denied.

## C. Distribution of False CMI in Violation of § 1202(a)

The motion to dismiss Plaintiff's § 1202(a) claim is also denied. Section 1202(a) provides that "[n]o person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement—(1) provide copyright management information that is false, or (2) distribute or import for distribution copyright management information that is false." 17 U.S.C. § 1202(a). To plead a violation of this provision, "plaintiff thus must plausibly allege that defendant knowingly provided false copyright information *and* that the defendant did so with the intent to induce, enable, facilitate, or conceal an infringement." *Krechmer v. Tantaros*, 747 F. App'x 6, 9 (2d Cir. 2018) (summary order).

Plaintiff alleges that the "Complex" logo at the top of the webpage and the "BY COMPLEX STAFF" byline below the article's title constitute false CMI that "signal authorship or copyright ownership of the entire article, including the Subject Photograph, by Complex," particularly in the absence of any gutter credit otherwise attributing authorship of the Photograph to anyone else. SAC ¶¶ 39–40. She further alleges that Defendants, in publishing the Photograph, "knowingly provided and/or distributed false copyright management information . . . in order to induce, enable, facilitate, or conceal infringement." *Id.* ¶ 41.

This Court previously rejected Plaintiff's § 1202(a) claim, reasoning based on her allegations at that time (1) that the logo is a "generic imprint on the website that is not located on or near the Subject Photograph, and . . . says nothing about the photograph's authorship or copyright status," and (2) that the "'BY COMPLEX STAFF' byline does not plausibly inform the public that the Subject Photograph is copyrighted." *Lixenberg*, 2023 WL 144663, at *5. "Without

further factual allegations," this Court concluded that the byline did not plausibly convey authorship of the Photograph. *Id.*

As a threshold matter, Complex Media argues that the law of the case doctrine bars reconsideration of Plaintiff's arguments. *See* Dkt. No. 56 ("Reply") at 7 (asserting that, because Plaintiff makes the same arguments as she did previously, and did not move for reconsideration of the Court's prior decision, "she essentially is asking this Court to reverse the law of this case"). Not so. "The law of the case doctrine commands that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise." *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009). "But where, as here, a plaintiff has filed an amended complaint following an earlier ruling, the law of the case doctrine does not apply to the extent that the plaintiff has offered new claims or factual allegations." *City of Phila. v. Bank of Am. Corp.*, 609 F. Supp. 3d 269, 282 (S.D.N.Y. 2022). In light of Plaintiff's new factual allegations, the law of the case doctrine is not dispositive here. *Id.*

Defendant also argues that Plaintiff has failed to state a claim because she has not plausibly pled "that she provided information that meets the definition of CMI, that the CMI is conveyed in connection with copies or displays of the work, and [that] the information is CMI under the statutory definition." Mot. to Dismiss 10. Having considered Plaintiff's new factual allegations, the Court finds that she has now stated a plausible § 1202(a) claim.

### 1. Existence of False CMI

Plaintiff has adequately alleged that Defendant's logo and byline constituted false CMI. The DMCA defines CMI as information "conveyed in connection with" the copyrighted work. 17

U.S.C. § 1202(c). CMI's purpose "is to inform the public that something is copyrighted." *Roberts*,

518 F. Supp. 3d at 737.

Defendant's byline and logo are further from the Photograph than a typical gutter credit:



SAC, Ex. B. Unlike a situation where a defendant's purported CMI is separated from the

copyrighted work at the bottom of the webpage, however, Plaintiff has plausibly alleged that

Complex Media's logo and byline are "accessible in conjunction with" the Photograph. *Mango*,

356 F. Supp. 3d at 378.  This provides support for plaintiff's allegation that Defendant's logo and

byline "could be construed as false CMI," which is sufficient to survive a motion to dismiss. *See*

*Post Univ.*, 2023 WL 5507845, at *6 (finding that plaintiff had "plausibly pled that Defendant's

Watermark . . . could be construed as false CMI when considered in conjunction with the Copyright

Notice at the bottom of the website" and that watermarked copies were available only behind a

pay wall); *see also Aaberg*, 2018 WL 1583037, at *7 (denying motion to dismiss in light of plausible allegations that information on physical pins constituted CMI because they bore "some combination of a trade or brand name, a logo, and a website address," "sufficient to identify the copyright owning Plaintiff"); *see also Cable v. Agence France Presse*, 728 F. Supp. 2d 977, 981 (N.D. Ill. 2010) (denying motion to dismiss because "plaintiff's name and hotlink f[e]ll within the scope of copyright management information"); *Aardwolf Indus., LLC v. Abaco Machs. USA, Inc.*, No. 16-CV-1968, 2016 WL 9275401, at *5 (C.D. Cal. Nov. 21, 2016) (denying motion to dismiss because plaintiff's "Design Mark and [website address] operate together to identify Plaintiff, the copyright owner, and also to specify other identifying information . . . and hence make up CMI").

"At summary judgment [or trial, Defendant] will have an opportunity to present evidence that the placement of the CMI either indicated that it did not refer to the [Photograph], or was sufficiently removed to demonstrate that [it] lacked the intent required to show a violation of the DMCA." *BanxCorp*, 723 F. Supp. 2d at 610–11. At the motion to dismiss stage, however, unless it is *implausible* that a viewer could understand the information to be referring to the defendant as the work's copyright holder, dismissal is inappropriate." *Post Univ.*, 2023 WL 5507845, at *4. Plaintiff has thus plausibly alleged that Defendant "provided false copyright information," the first requirement for a § 1202(a) claim. *Krechmer*, 747 F. App'x at 9.

### 2. Knowledge and Intent

Plaintiff has also plausibly alleged scienter. To plead a violation of § 1202(a), a plaintiff "must plausibly allege that defendant knowingly provided false copyright information *and* that the defendant did so with the intent to induce, enable, facilitate, or conceal an infringement." *Krechmer*, 747 F. App'x at 9. Plaintiff pleads that Defendants "knowingly provided and/or distributed false" CMI. SAC ¶ 41. While these pleadings are sparse, as discussed in greater detail

above, "Rule 9 of the Federal Rules of Civil Procedure allows intent and knowledge to be alleged generally, and the Second Circuit requires district courts to be lenient in allowing scienter issues to survive motions to dismiss because such issues are appropriate for resolution by the trier of fact." *Michael Grecco Prods., Inc. v. Alamy, Inc.*, 372 F. Supp. 3d 131, 139 (E.D.N.Y. 2019) (denying motion to dismiss DMCA claim); *see also Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 305 (S.D.N.Y. 2011) ("While the location of CMI may go to . . . Defendants' intent, that fact issue cannot be resolved on a motion to dismiss."). Plaintiff's plausible allegations that Defendants removed her CMI and added Complex Media's further "support the inference that [Defendants] knew [the Complex Media] CMI was false" and "intended to facilitate infringement through [the] false claim of copyright" ownership of the Photograph. *Goldstein v. Metro. Reg'l Info. Sys., Inc.*, No. 15-CV-2400, 2016 WL 4257457, at *8 (D. Md. Aug. 11, 2016) (explaining that "knowledge and intent [may] be pleaded generally" and reasoning that plaintiff's plausible allegation that her copyright mark was on the photograph before defendant altered it supported inference of scienter). For these reasons, the Court denies the motion to dismiss Plaintiff's DMCA claims.

### III.    Dismissal of the Does

Finally, Complex Media argues that the John Doe Defendants must be dismissed because this district requires timely notice of their identities and the claims against them could be barred by the statute of limitations. Mot. to Dismiss 18. Defendant's motion to dismiss the Doe Defendants is denied.

Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made

within a specified time. But if the plaintiff shows good cause for the failure, the
court must extend the time for service for an appropriate period.

Fed. R. Civ. P 4(m). "This Rule applies to John Doe defendants, but courts often refrain from
dismissing suits against such defendants until the plaintiff has had some opportunity for discovery
to learn the identities of the unnamed defendants." *Cole v. John Wiley & Sons, Inc.*, No. 11 Civ.
2090, 2012 WL 3133520, at *17 (S.D.N.Y. Aug. 1, 2012). Although more than three years have
passed since the case was first filed, due in part to the stay of this action while *Grecco Products*
was on appeal, Plaintiff has not yet had any opportunity to discover the identities of the Doe
Defendants. Complex Media's motion to dismiss these Defendants is therefore denied without
prejudice to renew.

## CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion to dismiss. The Clerk of
Court is respectfully directed to close the motion pending at Dkt. No. 51.

SO ORDERED.

Dated:    October 29, 2025
          New York, New York

 

Ronnie Abrams
United States District Judge